## HARRISON v. WEIR.

(Supreme Court, Appellate Division, First Department. April 18, 1902.)

CARRIERS — DEATH OF ANIMALS — BREACH OF CONTRACT—NEGLIGENCE OF SHIPPER—DAMAGES.

Where a carrier receiving dogs for shipment by a certain train ships them by an earlier train, and, no one being present to receive them, returns them to the place of shipment, and the shipper, learning of their return, directs them to be reshipped on the next day, without in any way providing for them, he is not entitled to damages for the death of one of the dogs, resulting from his long confinement; the proximate cause of the death being the neglect of the shipper to have the dogs attended to before their reshipment.

Ingraham and Hatch, JJ., dissenting.

Appeal from appellate term.

Action by Roger T. Harrison against Levi C. Weir, as president of the Adams Express Company. From a judgment in favor of plaintiff, defendant appeals. Reversed.

See 69 N. Y. Supp. 957; 73 N. Y. Supp. 1119.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

Richard R. Rogers, for appellant.
H. H. Browne, for respondent.

PATTERSON, J. This action was brought in the municipal court to recover damages for the breach of a contract for the transportation from the city of New York to Danbury, in Connecticut, of certain dogs, the property of the plaintiff. The pleadings in that court were oral. The record contains the statement that the action was for "loss of goods by a common carrier." The evidence shows, however, that the case was treated as one for the breach of a contract. The plaintiff claimed that, as a consequence of such breach, one of the dogs died; and he was allowed to recover, as part of his damages, the value of that dog. From the judgment entered in the municipal court an appeal was taken to the appellate term of the supreme court, where the judgment was affirmed, and by leave of that court the case is now before us for review.

In the opinion of the appellate term it is properly remarked that the general rules of law respecting the obligations and liability of a carrier of animals are not the subject of discussion in this case. The question is as to the proximate cause of the death of the dog. It is ascribed by the plaintiff directly to the breach of a special contract for transportation made by the plaintiff with the defendant's agent, but a

review of the evidence satisfies us to the contrary. An examination of the plaintiff's own testimony will suffice to show that the death of the dog is to be attributed rather to his (the plaintiff's) own neglect, than to the fault of, or to the breach of contract by, the defendant. According to the plaintiff's statement, in October, 1899 (the particular date is not mentioned), he was the owner of five Japanese spaniels; and at a quarter to 7 o'clock in the morning he delivered them, boxed up in a crate, to the agent of the defendant, in order that they might be shipped to Danbury, in Connecticut, where he intended to exhibit them at a dog show. He locked them in the crate, and kept the key in his possession. He asked the defendant's agent to send the dogs to Danbury by the 8 o'clock morning train, but was told that they could not be shipped by that train. He stated to the agent that he desired the dogs to be sent by the train on which he (the plaintiff) would go, in order that they might receive the attention they required, and thereupon it was agreed between himself and the agent that the dogs should be sent down by the 9 o'clock train. No written receipt was taken for the dogs. The plaintiff and his wife went to take the 9 o'clock train, and then learned that "all the dogs went down on the 8 o'clock train." Whether this refers to the plaintiff's dogs, or to all dogs that were being sent for exhibition to the show at Danbury, is not clear; but the plaintiff's counsel, in his brief and statement of facts, interprets this testimony as meaning that the plaintiff's dogs were sent down on the 8 o'clock train, instead of the 9 o'clock train. At all events, when the plaintiff reached Danbury, the dogs were not there; and later in the day he learned that they had been returned by the defendant to his place of business in the city of New York, where there was nobody to receive them. On learning that the dogs had thus been returned, the plaintiff communicated over the telephone with a neighbor of his, named Wilson, and instructed Wilson to redeliver the crate of five dogs to the defendant, to be forwarded to Danbury by the 5 o'clock train on the next morning. They did not reach Danbury until the afternoon of the next day; and when the plaintiff opened the crate he found that one of the dogs was ill, suffering from the retention of urine. Efforts were made to relieve the animal, but it died two days afterward from a rupture of the bladder, caused undoubtedly by the retention of urine, resulting from the training and habit of the dog as a house dog, which would not in confinement perform the operation of relieving his bladder. The contention of the plaintiff now is that the death of the dog, resulting from the cause indicated, was the direct consequence of the breach of the defendant's contract to send the dog down by the 9 o'clock train, so that the plaintiff might accompany it and attend to its wants.

That there was a breach of a contract is plain, and whatever damages naturally resulted from that breach the plaintiff is entitled to recover. The dogs, if they were sent by the 8 o'clock train, were sent in violation of the contract; but they were returned to the plaintiff's place of business after the defendant failed to perform its special contract. That return would not relieve the defendant of liability, if the dogs were to be regarded as still either actually or constructively in the defendant's custody, and no interference of assumption of control

over them had been exercised by the plaintiff, and he had remained in ignorance of the whereabouts of the dogs, or what the defendant had done with them. But he learned that they had been returned to his place of business, and then he, knowing of the peculiarities of the dog that died, and of the necessity that existed for taking care of it and providing an opportunity for it to perform the operation of nature, and fully cognizant of the peril to which the dog was exposed by being confined, telephoned to Mr. Wilson to redeliver the dogs, evidently in the condition in which they were, to the carrier, to be transported by train the next day to Danbury, without in any way providing for their relief. He knew, not only as a veterinary surgeon, but from his intimate acquaintance with this dog he had personally trained, precisely what his requirements were; and when he determined that the dog should be redelivered to the carrier, to be shipped again to a distant point, it was his duty to make provision for the necessity of the dog, and, if he did not, he assumed the consequences of the situation. It does not relieve him from this responsibility that the dog was locked up in a crate secured by a padlock, the key of which was with the plaintiff. A direction to his friend Wilson, who assumed to perform the service of redelivering the dogs to the defendant, would doubtless have resulted in this dog being properly relieved. The proximate cause of the death of the dog from the retention of urine and its consequences was the neglect of the plaintiff to have the dog relieved, when it might have been done, and when it was within the plaintiff's power to have it done, by giving proper directions. Allowing the dog to be returned to the custody of the carrier, after so many hours had elapsed from the time at which it was originally boxed up, on the morning on which it was first shipped, without its wants being attended to, was an intervening cause to which its death may be attributed.

The determination of the appellate term and the judgment of the municipal court should be reversed, and a new trial ordered.

VAN BRUNT, P. J., and McLAUGHLIN, J., concur.

INGRAHAM, J. (dissenting). This action was commenced in the municipal court upon oral pleadings, the statement in the record being that the plaintiff "complained of the defendant for loss of goods by a common carrier," and the defendant answered said complaint by a general denial. The plaintiff proved that on the 10th of October, 1899, he shipped a crate of five dogs by the Adams Express Company to Danbury, Conn. This shipment was 15 minutes to 7 o'clock in the morning. The dogs appear to have been shipped in pursuance of an understanding with the superintendent of the company, at Canal street; and the plaintiff there paid the express charges, of over $5. When the expressman came for the dogs on Tuesday morning, the plaintiff placed the dogs in a box, in the presence of the express driver. The box was locked, the key being retained by plaintiff. The usual time for the delivery from the plaintiff's residence, in Cherry street, N. Y., to Danbury, Conn., is about six hours. The plaintiff told the representative of the defendant that the dogs must be let out, to be relieved. The arrangement with the

plaintiff's representative at the time the plaintiff delivered the dogs was that the crate of dogs was to go on the 8 o'clock train on Tuesday morning. It appeared that subsequently the expressman called upon the plaintiff, and said that the plaintiff could not get the dogs on the 8 o'clock train, but could get them on the 9 o'clock train. The plaintiff then went to the depot for the 9 o'clock train, but was informed that the dogs had gone down on the 8 o'clock train. The plaintiff then went to Danbury, where he had entered these dogs for exhibition at a fair, but found that the dogs had not arrived; the defendant having failed to ship them on either the 8 or 9 o'clock train, for some reason not disclosed by the record. Subsequently, in the afternoon of that day, the dogs were returned to the plaintiff's house, and seem to have been left there in his absence until the following morning, when, in consequence of a telegraphic communication from the plaintiff at Danbury, they were shipped to Danbury, but were not received by the plaintiff until late at night. When received, in consequence of their confinement in the box, one of the dogs suffered injury, from which he subsequently died; and it is to recover for the value of the dog that this action is brought.

There was no excuse given by the defendant for the failure to ship the dogs on Tuesday morning. The court gave judgment for the plaintiff for the value of the dog, and there is no question presented as to the amount of the judgment. The dogs were to be delivered to the plaintiff at Danbury, Conn. The defendants had first undertaken to send them by the 8 o'clock train, and then stated to the plaintiff that they would be sent by the 9 o'clock train. The plaintiff, accepting this notice, went on the 9 o'clock train, but the dogs were not shipped on that day. Here was a clear breach of the contract between the plaintiff and the defendant, and I can see no reason why the defendant was not liable for the damages resulting from the breach of that agreement. Whether or not the defendant's representative understood the serious consequences that resulted from the confinement of this dog in a box for a period of over 24 hours does not seem to be material. They undertook to transport the dog upon a particular train on a particular day, and failed to perform that undertaking. The proximate result of that failure was the confinement of the dog in this box for over 36 hours, in consequence of which the dog died. There was no supervening cause or independent force which produced the injury. It was the direct result of the failure of the defendant to carry out its undertaking to transport the dog to Danbury upon the 8 or 9 o'clock train on Tuesday morning. It is quite true that the defendant, as a common carrier, was not an insurer of the dog's life. If the defendant had transported this dog upon the train at the time contemplated by the parties when the dog was delivered, and the dog had died for any reason not directly attributable to the negligence of the defendant, it is clear that the defendant would not have been liable; but here the injury was occasioned by the failure of the defendant to transport it upon the day and train upon which it had undertaken to transport it at the time the contract between the parties was made. If, when the defendant received these dogs, they had, instead of sending them

by train to Danbury, kept them in their warehouse until the dogs died from thirst or hunger, it could not, I think, be disputed but that the defendant would be liable, although the cause of the injury was a cause that would not have affected a box containing inanimate matter. I think the same rule should be applied as in the case of perishable articles, like fruit or other food products, which the defendant had undertaken to transport by a particular train, and, because of a failure to transport it by the train agreed upon, the product had become valueless. In that case the injury would not be occasioned by the inherent quality of the article to be transported, but by the neglect of the defendant to transport it within a reasonable time, or according to its contract. So in this case the direct result of the death of the dog was his confinement in this box for a period of 36 hours, when, if the contract had been carried out, he would have been delivered to the plaintiff in Danbury within 6 hours. I think, therefore, there was evidence to sustain this judgment. Nor do I think there was any negligence on the part of the plaintiff which could affect his right to recover. He was at Danbury, and when he heard that the dogs were in New York he telephoned instructions to send them on the 5 o'clock train on the following (Wednesday) morning. The dogs evidently did not come on the 5 o'clock train, as they did not reach Danbury until late that night. It was evident, therefore, that these instructions were not carried out. I think, therefore, that the direct cause of the death of the dog was the failure of the defendant to perform its contract, and for that the defendant was liable.

I think the judgment should be affirmed, with costs.

HATCH, J., concurs.